UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No.8:22-cv-226

FLORIDA FAIR HOUSING ALLIANCE, INC,

     Plaintiff,

v.

ADDISON AT SUNLAKE, LLC D/B/A THE
ADDISON AT SUNLAKE,

     Defendant.

_____/

## COMPLAINT FOR HOUSING DISCRIMINATION

Plaintiff Florida Fair Housing Alliance, Inc (the "Alliance") sues Defendant Addison at Sunlake, LLC d/b/a The Addison at Sunlake.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court arises under 42 U.S.C. § 3613(a), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

2.     Venue in this District is proper because Defendant transacts business in this District, and the complained of conduct of Defendant occurred in this District.

## PARTIES

3.     The Alliance is a national, nonprofit, public service organization incorporated under the laws of Florida with its principal place of business in Miami-Dade, Florida. The Alliance's sole mission is to end discrimination in housing based on race, sex, and other protected classes covered by the Fair Housing Act and state and local fair housing laws, and to promote residential integration. The Alliance works to eliminate housing discrimination and to ensure equal

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

opportunity for all people through leadership, education and outreach, membership services, public policy initiatives, advocacy, investigation of fair housing violations, and enforcement.

4.    Defendant is a/an Florida Limited Liability Company, with its principal place of business located in Richmond, Virginia.

## DEMAND FOR JURY TRIAL

5.    The Alliance, respectfully, demands a trial by jury on all counts and issues so triable.

## ALLEGATIONS

6.    The federal Housing Choice Voucher program is the federal government's major program for assisting very low-income families, the elderly, and individuals with disabilities in affording decent, safe, and sanitary housing in the private rental market.

7.    Congress established the Housing Choice Voucher program (formerly known as the Section 8 Existing Housing Program) as part of the Housing and Community Development Act of 1974, Pub. L. No. 93-383, Title II, § 201(a), 88 Stat. 633, 662-66, now codified at 42 U.S.C. § 1437f, and Housing Community Development Act of 1987, Pub. L. No. 100-242, § 143, 101 Stat. 1814, 1850 (1988), codified as amended at 42 U.S.C. § 1437f(o); *see also* 24 C.F.R. §§ 982.1 et seq.

8.    The United States Department of Housing and Urban Development ("HUD") provides Housing Choice Voucher program funding to local public housing authorities ("PHAs"), which administer the Housing Choice Voucher program locally and issue vouchers to qualified individuals and families.

9.    Participants in the Housing Choice Voucher program use vouchers to find their own housing in the private rental market, including single-family homes, townhouses, and apartments.

**LAW OFFICES OF JIBRAEL S. HINDI, PLLC**
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

Participants are free to choose any housing that meets the program's requirements and are not limited to units located in subsidized housing projects. A housing subsidy is paid to the landlord directly by the PHA on behalf of the participant. The participant then pays the difference between the actual rent charged by the landlord and the amount subsidized by the program.

10.     Florida has a current estimated population of 21,781,128 people. The population is approximately 15.1 percent African American or Black (not Hispanic) and 57.7 percent White (not Hispanic). There are an estimated 7,775,190 households in Florida, which are an estimated 15.8 percent African American or Black (not Hispanic) and 79.0 percent White (not Hispanic).

11.     An estimated 198,481 households in Florida currently participate in the Housing Choice Voucher program.

12.     In Florida, African-American households are overrepresented in the households participating in the Housing Choice Voucher program. Whereas African-American/Black households comprise 15.8 percent of all households in Florida, they make up 52.0 percent of Housing Choice Voucher program participants. In contrast, only 26 percent of participating households are White (not Hispanic), although white households comprise 79.0 percent of all households in Florida.

13.     Florida residents who participate in the Housing Choice Voucher program are largely concentrated in predominantly African-American neighborhoods.

14.     This case involves the "The Addison at Sunlake" housing community, located at 18932 Addison Lake Drive, Land O' Lakes, FL 34638 ("the Complex").

15.     Defendant is the owner and otherwise landlord of the Complex.

16.     In the recent years, the Alliance learned that the majority of housing providers in Florida have refused accept Housing Choice Vouches from individual recipients. The Alliance was

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

specifically aware that Defendant had such a practice and had refused to accept Housing Choice Voucher as payment towards any available rental property, resulting in the loss of housing opportunities for recipients of Housing Choice Vouchers.

17.     To investigate whether such practices were, in fact, occurring in Florida, in 2020, the Alliance commenced testing housing providers. Through this testing, the Alliance sought to assess whether the tested housing provider's policies, procedures, and practices with respect to the acceptance, consideration, or otherwise handling of Housing Choice Vouchers were discriminatory.

18.     The Alliance coordinated each of the tests and provided a common set of instructions to the individual testers. Each test was conducted by an experienced tester employed by the Alliance (the "Tester"). In each test, the Tester posed as a prospective tenant seeking information and quotes for available rental property. Tests performed by telephone were recorded.

19.     On January 6, 2022, the Alliance tested Defendant for unlawful discriminatory housing practices. To test Defendant, the Tester called the Complex at phone number 813-345-4328 (the "Call"). After being connected to an agent of Defendant, the Tester first asked if rental property was available. Defendant, by and through its agent, responded that rental property was available, namely, a one-bedroom apartment (the "Dwelling"). The Tester then asked if Defendant accepted Section 8 payment vouchers and Defendant responded that it (Defendant) did not.

20.     As confirmed by the Call, Defendant does not and/or otherwise refuses to accept Housing Choice Vouchers.

21.     Defendant's discriminatory and unlawful practices have frustrated and continue to frustrate the Alliance's mission of ensuring that all people have equal access to housing opportunities in Florida.

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

22.     Defendant's refusal to accept Housing Choice Vouchers frustrates the Alliance's mission of combating housing discrimination and promoting residential integration. Prior to the filing of this Complaint, the Alliance has diverted its scarce resources and staff from other activities to investigating and counteracting the discriminatory policies employed by Defendant because those practices constitute unlawful discrimination on the basis of source of income and have a disparate impact on statutorily-defined protected classes.

23.     The Alliance devoted considerable staff time and resources to efforts to identify the nature and scope of Defendant's discriminatory conduct.

24.     Because the core aspects of the Alliance's mission are to combat housing discrimination and promote residential integration, that mission is frustrated when a housing provider imposes additional discriminatory impediments that make it more difficult and more expensive for African Americans to obtain rental housing. Specifically, the Alliance's mission is frustrated by Defendant's discriminatory policies and practices alleged in this Complaint, as these policies and practices violate federal and Florida fair housing laws, undermine rather than advance equal housing opportunities, perpetuate the harms of residential segregation, and impose disproportionate injuries on Florida's low-income African-American households.

25.     Defendant's refusal to accept Housing Choice Vouchers is the equivalent of, and has the same effect as, refusing to rent to African Americans. Defendant's discriminatory policies also harm the neighborhoods in which African-American/Black residents are statistically more likely to live, and impermissibly "red line" those neighborhoods by refusing to accept Housing Choice Vouchers. These harms all run counter to the Alliance's central goals.

26.     To address and attempt to counteract the effects of Defendant's discriminatory conduct, prior to the filing of this action, the Alliance has engaged in a community outreach and a

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

public education campaign to raise awareness of these discriminatory practices among Housing Choice Voucher program participants, landlords, and policy makers in Florida.

27.     Such counter measures undertaken by the Alliance required the diversion and expenditure of financial resources and staff time, including time and costs associated with drafting and distributing educational materials; mailing costs and graphic design expenses; travel time and expenses; and staff hours diverted from other work to conduct these outreach activities. In addition to implementing these counteractive measures, the Alliance staff was required to spend additional time designing and preparing counteractive strategies specifically targeted toward addressing the impact of Defendant's discriminatory policies regarding voucher-holders. Thus, staff not only diverted scarce time and resources away from routine tasks and activities to conducting education and outreach but also to preparing the education and outreach strategy and materials.

28.     In addition, in order to effectively counteract Defendant's conduct, the Alliance had to engage in activities above and beyond its normal operations. For example, the Alliance conducted direct outreach to Florida residents regarding the unlawfulness of this practice of refusing to accept vouchers as payment towards rent. This targeted, localized, and direct outreach required specific expenditures that were distinct from the Alliance's everyday operations, which are traditionally national in scope and designed to have a broader focus.

29.     In order to identify and counteract Defendant's discriminatory conduct, the Alliance had to divert scarce resources and time away from other projects and programs. These expenditures were not included in the Alliance's budget. As a result, the Alliance had to pull resources away from other planned and budgeted projects in order to garner the resources necessary to counteract Defendant's actions.

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

30.     Because of the measures the Alliance was forced to take to identify and counteract Defendant's discriminatory insurance practices, the Alliance was forced to delay, suspend, or even forego other existing programs or projects. For example, by the year 2021, the Alliance had become aware of a potentially discriminatory loan polices maintained by local secured-loan lenders; however, the diversion of resources to counteract Defendant's actions required the Alliance to delay its planned efforts to identify and address the discriminatory impact of that policy. Further, the commitment of time and resources to counteract Defendant's discrimination rendered the Alliance unable to pursue planned efforts to analyze and address insurance companies' discriminatory insurance restrictions involving recipients of Housing Choice Vouchers. Despite this impact on the Alliance's other programs and services, the Alliance nevertheless diverted resources to these counteractive measures out of concern that, if left unaddressed, Defendant's discriminatory policies would harm individuals that rely on vouchers to obtain housing.

**COUNT 1**
**VIOLATION OF THE FAIR HOUSING ACT**
(DISPARATE IMPACT)

31.     The Alliance realleges paragraphs 6 through 30 as if fully set forth herein.

32.     As set forth above, Defendant's refusal to accept Housing Choice Vouchers is the equivalent of, and has the same effect as, refusing to rent to African Americans.

33.     As a result, Defendant's practice and/or policy to refuse to accept Housing Choice Vouchers results in a significantly disproportionate impact on the basis of race (for African-American/Black individuals and households).

34.     Defendant's policy and/or practice of refusing to accept Housing Choice Vouchers, if facially neutral, has had and continues to have a discriminatory effect on African-

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

American/Black individuals and households in Florida because these protected groups (*i.e.*, African-American/Black individuals) are disproportionately more likely to participate in the Housing Choice Voucher program as compared to the relevant non-protected groups, whereby refusing to accept Housing Choice Vouchers makes rental housing unavailable to these protected groups in violation of the Fair Housing Act, 42 U.S.C. § 3601. Defendant's refusal to accept Housing Choice Vouchers predictably and disproportionately harm these groups.

35.     Defendant's policy and/or practice of refusing to accept Housing Choice Vouchers also predictably or disproportionately harm neighborhoods in Florida where African-American/Black households are statistically more likely to live.

36.     Defendant's policy and/or practice of refusing to accept Housing Choice Vouchers does not have a substantial, legitimate, nondiscriminatory objective. Even if Defendant frames its discriminatory practice as having some business purpose, other, less discriminatory alternatives are and have been available to Defendant to achieve that objective.

37.     The Alliance has been injured by Defendant's discriminatory conduct and has suffered damages as a result.

38.     Defendant's conduct was intentional, willful, and made in reckless disregard of the known rights of others.

39.     WHEREFORE, the Alliance, respectfully, requests that this Court: the Alliance, respectfully, requests that this Court:

   (a)     Declare the actions of Defendant complained of herein to be in violation of the Fair Housing Act;

   (b)     Enter a permanent injunction enjoining Defendant, its successors, and its servants, agents, and employees, and all those acting in concert with it, from engaging in discrimination practices, such as the refusal to accept Housing Choice Vouchers.

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

(c)   Enter a permanent injunction compelling Defendant, its successors, and its servants, agents, and employees, to participate in housing discrimination training;

(d)   Award damages to Plaintiff against Defendant for the diverted resources expended as a result Defendant's conduct complained of herein;

(e)   Award damages to Plaintiff against Defendant for cost of the local marketing campaigns Plaintiff requires to combat Defendant's income-based discrimination;

(f)   Award Plaintiff its costs and reasonable attorneys' fees in this action;

(g)   Enter a judgment in favor of the Plaintiff for the total amount of its damages, plus pre-judgment interest; and

(h)   Award Plaintiff any further relief this the Court deems just and proper.

## COUNT 2
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

40.   The Alliance realleges paragraphs 6-30 and 32-38 as if fully set forth herein.

41.   The stated purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat.§ 501.202(2).

42.   Section 501.204(1), Fla. Stat., declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

43.   The Alliance is a consumer within the meaning of FDUTPA. *See* Fla. Stat. § 501.203(7) (defining "consumer" as meaning "an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; **corporation; any commercial entity, however denominated**; or any other group or combination." (emphasis added)).

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

44.     The Dwelling Defendant holds open for rent is subject matter, and/or otherwise a transaction, governed by FDUTPA. *See* Fla. Stat. § 501.203(8) (defining "trade or commerce" as meaning "the advertising, soliciting, providing, offering, or distributing, **whether by sale, rental, or otherwise**, of any good or service, or **any property**, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated," and further stating that "'[t]rade or commerce' shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity." (emphasis added)).

45.     As stated above, Defendant's refusal to accept Section 8 payment vouchers runs afoul with the Fair Housing Act under a theory of disparate impact. As made clear above, Defendant's practice and/or policy to refuse to accept Housing Choice Vouchers results in a significantly disproportionate impact on the basis of race (for African- American/Black individuals and households).

46.     In this light, Defendant violated FDUTPA by engaging in unfair, unconscionable, and otherwise deceptive, acts or practices in the conduct of any trade or commerce by explicitly refusing to accept Section 8 payment vouchers as demonstrated by the Call. *See* PNR, Inc. v. Beacon Property Management, Inc., 842 So.2d 773, 777 (Fla. 2003) ("FDUTPA applies to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if it involves only a single party, a single transaction, or a single contract.").

47.     Moreover, such conduct further constitutes a per se violation of FDUTPA under § 501.203(3)(c) because such conduct violates § 3604(d) of the Fair Housing Act.

48.     Defendant has violated the FDUTPA by engaging in the unfair and deceptive practices as described herein, of which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers, and in so doing, harmed the Alliance and

PAGE | **10** of **11**

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com

otherwise caused the Alliance to suffer a loss by aggravating its mission, purpose, and causing

the diversion of the Alliance's resources.

49.     WHEREFORE, the Alliance, respectfully, requests that this Court:

(a)     Declare that Defendant has violated FDUTPA because its (Defendant's) conduct is unlawful under the Fair Housing Act, and therefor Defendant has committed *per se* violations of FDUTPA.

(b)     Damages, attorneys' fees, and costs, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105.

Dated: January 28, 2022

Respectfully Submitted,

 /s/ Jibrael S. Hindi

**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail: jibrael@jibraellaw.com
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone: 954-907-1136
Fax: 855-529-9540

*COUNSEL FOR PLAINTIFF*

LAW OFFICES OF JIBRAEL S. HINDI, PLLC
110 SE 6th Street, 17th Floor | Ft. Lauderdale, Florida 33301 | Phone (954) 907-1136 | Fax (855) 529-9540
www.JibraelLaw.com