UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
Case No. 22-226-CV-KKM/AP

FLORIDA FAIR HOUSING ALLIANCE, INC.,

    Plaintiff,

v.

ADDISON AT SUNLAKE, LLC d/b/a
ADDISON AT SUNLAKE,

    Defendant.

_____/

DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS THE COMPLAINT

Defendant, ADDISON AT SUNLAKE, LLC ("SUNLAKE"), through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), and Local Rule 3.01, moves to dismiss the Complaint and as grounds for the relief sought states:

Background to Dispute

Florida Fair Housing Alliance, Inc. ("FFHA") was incorporated by Ryan Turizo ("Turizo") on February 13, 2020. The corporation's principal place of business is a residence located at 1736 NE 171 Street, North Miami Beach.[1] Before incorporating FFHA, Turizo filed numerous lawsuits as an individual plaintiff. FFHA and Turizo are serial filers of "tester" lawsuits in state and federal courts.[2]

---

[1] See accompanying Request for Judicial Notice. Courts may judicially notice facts in connection with a Motion to Dismiss pursuant to Rule 12(b)(6). *Bryant v. Avado Brands, Inc.*, 187 F. 3d 1271 (11th Cir. 1999); *Frame v. U.S.*, 2010 U.S. Dist. LEXIS 141894 (M.D. Fla. 2010).

[2] Some examples in the Southern District of Florida just from the year 2020 include:

    Turizo v. Tamarac Pointe LTD, S.D. Fla. Case No. 20-60073-cv-RAR
    Turizo v. Cypress Trail Apts, Ltd., S. D. Fla. Case No. 20-60103-cv- RAR
    Turizo v. Inlet Bay at Gateway LLC, S.D. Fla. Case No. 20-60172-cv-FAM

FFHA and Turizo have made two primary claims in their "tester" lawsuits: first, that the rental criteria used by multifamily housing providers ("MHPs") have a disparate impact on felons who are more likely to be minorities, or second, that MHPs located in Miami-Dade and Broward Counties have failed to comply with local "source of income" ordinances that require them to consider Section 8 Housing Choice Vouchers ("HCV"). FFHA uses a singular method of testing in all cases: Turizo calls a pre-selected MHP. When the phone is answered, Turizo inquires if there are any apartments available. If the answer is yes, he then either asks whether the property accepts applicants with criminal convictions or Section 8 HCVs. If Turizo receives a negative response to either question, FFHA's attorney, Jibrael Hindi, Esq. ("HINDI") prepares and serves the MHP with a demand letter which threatens that the attached draft lawsuit will be filed if the matter is not settled by a date certain. Allegations in the Complaint before this Court ("Complaint") show FFHA used this modus operandi *sub judice*.

¶19 of the Complaint alleges that FFHA's field tester (Turizo) called SUNLAKE on January 6, 2022 and asked if it accepted Section 8 HCVs. The "agent" who answered the phone responded negatively. Id. [3] HINDI then sent a demand letter dated January 17, 2022 (attached

---

FFHA v. Coral Haven Apts, LLP, S. D. Fla. Case No. 20-20921 -cv-AHS
FFHA v. Japanese Garden Mobile Estates, Inc., S.D. Fla. Case No. 20-21091-cv-MGC
FFHA v. Park East-West Ltd, S.D. Fla. Case No. 20-21976-cv-RNS
FFHA v. Deerpark on the Lake, LLC, S.D. Fla. Case No. 20-22106-cv-DPG
FFHA v. Catalina Rental Apts, Inc., S.D.Fla. Case No. 20-22113-cv- DPG
FFHA v. Liberty Apt. Highland LLC, S.D. Fla. Case No. 20-22269-cv-KMM
FFHA v. 601 Ocean Investments, LLC, S.D. Fla. Case No. 20-22664-cv-KMW
FFHA v. PMG 11th Street Holdings LLC, S.D. Fla, Case No. 20-61120
Turizo v. 183 Palmetto Holdings LLC, S.D. Fla.  Case No. 20-61822 -cv-RS
Turizo v. Cassa Grove 28, LLC, S.D. Fla. Case No. 20-62663-cv-RAR

[3]   The Complaint fails to identify the name of the person with whom Turizo spoke or to state facts which establish that person maintained an agency relationship with SUNLAKE. FFHA's allegation that the person to whom Turizo spoke was an "agent" of SUNLIKE is a conclusion of law.

as Exhibit "A") referring to FFHA's January 6, 2022 call along with a draft of this lawsuit alleging that SUNLAKE *"failed"* its testing by refusing to accept Section 8 HCVs. [4] SUNLAKE responded to HINDI (through counsel) that neither 42 U.S.C. 1437f nor Pasco County, Florida required its participation in the Section 8 HCV program (through enactment of a "source of income" ordinance) and its decision not to participate in that program equally impacted all qualified prospective tenants. Because SUNLAKE did not meet FFHA's demand, the instant lawsuit was filed.

The Complaint is due to be dismissed because it lacks <u>relevant</u> statements of ultimate fact and consequently fails to set forth a plausible basis for its claim of disparate impact under the Fair Housing Act ("FHA").

Memorandum of Law

I.    <u>Pleading Standards</u>.

Fed. R. Civ. P. 8 governs the standard of pleading in all civil actions and proceedings in the United States District courts. Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. That standard does not require detailed factual allegations, but it demands more than an unadorned "the-defendant-unlawfully-harmed-me accusation."

Dismissal is appropriate under Rule 12(b)(6) if the claim either (1) fails to present a cognizable legal theory, or (2) fails to contain sufficient facts to support a cognizable legal

---

[4] Where the plaintiff refers to certain matters in a complaint and documents not attached to the complaint are central to the plaintiff's claim, a court may consider those documents as part of the pleadings for purposes of Rule 12(b)(6) dismissal. *Turner v. Jordan*, 2021 U.S. Dist. LEXIS 250916 (M.D. Fla. 12/20/21) citing *Brooks v. Blue Cross Blue Shield*, 116 F. 3d 1364 (11th Cir. 1997). If a defendant attaches those documents to the motion to dismiss, the court need not convert the motion to dismiss into a motion for summary judgment.

theory. See, *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). See also *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) [dismissal under Rule 12(b)(6) is warranted if the complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678 (quoting Fed. Rule Civ. P. 8(a)(2)). Thus, a complaint's allegations "must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009).

These principles are particularly important in disparate impact cases because they are subject to a heightened pleading standard. *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, ____ U.S. _____, 135 S. Ct. 2507, 192 L. Ed. 2d 514 (2015). To state a *prima facie* case of disparate impact discrimination, a plaintiff must identify a specific practice or policy that statistically causes a disparate impact on the protected group. The plaintiff also must allege and demonstrate a **_robust_** causality between the claimed practice and the alleged disparity to protect a defendant from liability for a disparity it did not create. *Inclusive Cmtys*, 135 S. Ct. at 2523. Whether a case presents a claim of disparate impact is best examined at the pleading stage. A plaintiff who fails to allege **_facts_** and **_statistical evidence_** to demonstrate such a causal connection cannot make out a prima facie case of disparate impact." *Inclusive Cmtys*, at 135 S. Ct. 2507, 2522-23.

Statistical evidence offered in a pleading must be sound and **_geared to the community which gives rise to the claim_**. *Oviedo Town Ctr II, L.L.L.P. v. City of Oviedo*, 59 Fed Appx. 828,

Page **4** of **9**

836-837 (11th Cir. 2018).  See also *Schwarz v. City of Treasure Island*, 544 F 3d. 1201, 1217-1218 (11th Cir. 2008); *Fortune Soc'y v. Sandcastle Towers Hous. Dev. Fund Corp.*, 388 F. Supp 3d. 145, 153-154 (E.D.N.Y. 2019) and *Anderson Group, LLC v. City of Saratoga Springs*, 2008 U.S. Dist. LEXIS 39028 (N.D.N.Y. 2008) [relevant statistics are those based on disparities found in the surrounding area].  **_General population statistics are inadequate_** to establish the relationship, if any, between a pool of _qualified_ applicants who fall within a protected class and those who fall outside of a protected class and the respective impact a particular policy has on the classes.  *Alexander v. Edgewood Mgmt. Corp.*, 2019 U.S. Dist. LEXIS 111068 (D.D.C. 2019) [evidence of general racial disparities is insufficient unless all residents are qualified for public housing]; *Davis v. D.C.*, 925 F.3d 1240, 1254, (D.C. Cir 2019) [rejecting general population statistics where position at issue required a bachelor's degree].

II.     The Complaint is Due to be Dismissed Because  It Lacks Allegations of Ultimate Fact to Establish a Plausible Claim of Disparate Impact

Despite its acknowledgment in ¶14 of the Complaint that SUNLAKE is located in Land 'O Lakes, Florida, [5] FFHA nevertheless relies on demographics **_for the entire State of Florida_** (¶¶10-12) in its attempt to marshal facts to support a claim for disparate impact.  Notably, statistics

---

[5]     SUNLAKE requests the Court to take judicial notice of the fact that Land 'O Lakes is located in Pasco County, Florida.

concerning the population and its make-up for Pasco County, FL are *readily available* from the 2020 U.S. Census and from the State of Florida Office of Economic and Demographic Research.[6/7]

The Pasco County Housing Authority also offers demographics concerning its administration of the Section 8 HCV program. In 2021 the Housing Authority oversaw 1367 active Section 8 HCVs. Of that number, 26% of the heads of households (or 355 HCV holders) were African-American. Those 355 African-American Section 8 HCV holders equate to only .009 % of the African-American population in Pasco County. [8/9]

Thus, had FFHA appropriately used *community* rather than state-wide statistics in the Complaint, it could not state a plausible claim for relief because first, African-Americans represent only 6.7% of the population of Pasco County and second, they do not comprise the majority of the Pasco County's Section 8 HCV holders. These statistics hardly meet the benchmark of showing

---

[6] For 2020 U.S. Census data for Pasco County, see
https://www.census.gov/quickfacts/pascocountyflorida

For 2020 U.S. Census data for Land 'O Lakes, Florida see
https://www.census.gov/quickfacts/fact/table/landolakescdpflorida/PST045221

See also http://edr.state.fl.us/content/area-profiles/county/pasco.pdf

[7] Pasco County's population in 2020 was 561,891 of which 5.6% were African-American Its population for 2021 was 583,661 residents of which 6.7 % were African-American. In raw numbers, 6.7% of Pasco County's total 2021 population of 583,661 equates to 39,106 African-American residents.

[8] See, https://affordablehousingonline.com/housing-authority/Florida/Pasco-County-Housing-Authority/FL104

[9] FFHA's attempt to equate SUNLAKE's choice not to participate in the Section 8 HCV program with "refusing to rent to African Americans" (¶32) and perpetuating "segregation" (¶24) is a difficult case to make in a county in which African Americans represent only 6.7% of the entire population. This is precisely why the U.S. Supreme Court created a high bar at the pleading stage for disparate impact claims: to prevent hailing a party into court over a racial disparity it did not create.

the type of "substantially sufficient" statistical disparity necessary to raise an inference of causation. *De Reyes v. Waples Mobile Home Park L.P.*, 903 F. 3d 415 (4th Cir. 2018). See also *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 575-76 (2d. Cir. 2003) [plaintiffs can establish disparate impact by showing statistics that (1) $x\%$ of all of a protected class in an area depend on a type of housing affected by the challenged policy or practice, (2) $y\%$ of all of the non-protected population depends on that type of housing and, crucially, (3) $x$ is significantly greater than $y$]. [10]

Consequently, not only is the Complaint due to be dismissed because of FFHA's failure to allege readily available **_accurate_** community-based statistics, but those community-based statistics actually demonstrate that _amendment to the Complaint would be futile_:  there is no set of facts on which FFHA could state a claim for disparate impact against SUNLAKE based on its election not to participate in the Section 8 HCV program.  Indeed, African-Americans are **_less_** impacted by SUNLAKE's choice not to participate in the Section 8 HCV program because they are the minority of the cohort of Section 8 HCVs holders in Pasco County.  Given FFHA can never meet its burden to establish a "robust" causal link between SUNLAKE's election not to participate in the Section 8 HCV program and the disparity about which it complains (affording African-American Section 8 HCV holders residence at SUNLAKE), the Complaint is due to be dismissed with prejudice.

The remainder of allegations in the Complaint fail to cure this pleading issue.  They are mostly "window dressing" consisting of a recitation of the law that created the Section 8 HCV program (¶¶ 6-8), a description of how the Section 8 HCV program works (¶9), formulaic allegations about FFHA's diversion of resources and conclusions of law and unsupported

---

[10]    Here "$x$" equals 355 African American households who are Section 8 HCV holders; "$y$" equals 1012 non-African American households who are Section 8 HCV holders; and $x$ is **_significantly less_** than $y$.   There is no statistical disparity based on race.  Indeed, 100% of Pasco County's Section 8 HCV holders are unable to use their vouchers at SUNLAKE.

Page **7** of **9**

generalizations about African-Americans (¶¶ 12-13 and 24-25). [11]  All are intended to divert the Court's attention from FFHA's lack of allegations of ultimate fact describing the demographics of Pasco County.

III.     There is No Other Basis to Impose Liability on SUNLAKE

FFHA does not plead as an alternative basis that SUNLAKE is required to accept Section 8 HCVs because of a "source of income" ordinance.  Indeed, it could not.  Pasco County has never enacted a "source of income" ordinance.  This presents another basis to dismiss the Complaint with prejudice.

WHEREFORE, based on the arguments presented and the precedent cited,  SUNLAKE moves the Court to grant this Motion, dismiss the Complaint with prejudice and afford such other relief as the Court deems just and proper.

Respectfully Submitted,

LANGBEIN & LANGBEIN, P.A.
Counsel for Defendants
7480 Fairway Drive, Suite 209
Miami Lakes, FL 33014
(Tel) (305) 556-3663
(Fax) (305) 556-3647
Email: langbeinpa@bellsouth.net

By: */s/* Leslie W. Langbein
        Leslie W. Langbein, Esq.
        Fla. Bar No. 305391

---

[11]     FFHA does not even allege that African-Americans in Pasco County are forced to use their Section 8 HCVs in "racially concentrated (predominately minority) areas."  See e.g., *Inclusive Comtys Project v. Lincoln Prop. Co.*, at 896.  But even if such an allegation was included in the Complaint, the U.S. Supreme Court has opined that disparate impact liability does not mandate that affordable housing be located in neighborhoods with any particular characteristic. *Inclusive Cmtys*, at 135 S. Ct. 2507, 2522.

## CERTIFICATE OF SERVICE

I CERTIFY that a copy of the foregoing was filed electronically on 2/17/22 through CM/ECF and that a copy of the foregoing will be served via notification through CM/ ECF on all counsel for the parties of record or via first class mail on all unrepresented parties on the attached service list:

By: */s/* Leslie W. Langbein
Leslie W. Langbein, Esq.

## SERVICE LIST

Jibrael S. Hindi, Esq.
Thomas J. Patti, Esq.
Jibrael S. Hindi, PLLC.
110 SE 6th St., Suite 1744,
Fort Lauderdale. FL 33301
Tel: (844) 542-7235
Fax: (855) 529-9540
Email: jibrael@jibraellaw.com